# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ESTATE OF FERNANDO SAUCEDA, by and through its Special Administrator, Irene Sauceda; IRENE SAUCEDA, individually, and as natural parent and guardian of FERNADO SAUCEDA, a minor; SEBASTIAN SAUCEDA, a minor; and GIOVANNA SAUCEDA, a minor, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF NORTH LAS VEGAS, a corporate city of the State of Nevada; NORTH LAS VEGAS POLICE DEPARTMENT, an entity of the CITY OF NORTH LAS VEGAS; OFFICER JEFFREY POLLARD; DOE POLICE OFFICERS I through XX, inclusive, individually and in their official capacity; DOES XXI through XXX, inclusive; ROES XXXI through XL, inclusive, <br><br> Defendants. | Case No.: 2:11-cv-02116-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Motion to Reconsider (ECF No. 112) filed by the Estate of Fernando Sauceda, Irene Sauceda, and their minor children (collectively "Plaintiffs"), seeking partial reconsideration of an Order (ECF No. 107) entered by District Judge Andrew P. Gordon. In that Order, Judge Gordon granted in part and denied in part a Motion for Summary Judgment (ECF No. 101) filed by the City of North Las Vegas, the North Las Vegas Police Department ("NLVPD") and Officer Jeffrey Pollard (collectively "Defendants"), finding in favor of Defendants on some claims and withholding judgment on others pending supplemental briefing. Before the Court are also the two supplemental briefs (ECF Nos. 113 and 114)

ordered by Judge Gordon on the claims from which he withheld judgment. Defendants did not file a Response to the Motion to Reconsider.

For the reasons addressed below, the Court denies Plaintiffs' Motion to Reconsider and, after reviewing the supplemental briefs, denies summary judgment on the remaining claims challenged in the Motion for Summary Judgment.

I.   **BACKGROUND**

This case arises out of an officer-involved shooting at the home of Plaintiffs in North Las Vegas soon after midnight on January 1, 2011. A more complete description of the events can be found in Judge Gordon's Order and will not be fully repeated here. *See* (Order 1:15– 3:25, ECF No. 107). However, a summary of the key facts for this order are as follows.

On the night of the incident, Plaintiffs and several other individuals were at Plaintiffs' home celebrating New Year's Eve. (*Id.* 1:15– 2:19). Officer Pollard and another special operations officer of NLVPD, Michael Harris, were patrolling the neighborhood around Plaintiffs' home in Officer Harris's unmarked pickup truck. (*Id.* 2:1–2). The officers were wearing the NLVPD special operations uniform, consisting of an olive green fatigue-style shirt with subdued-colored NLVPD insignia patches on each arm, olive green fatigue-style pants, and a duty belt. (*Id.* 2:2–5). Before and after driving past Plaintiffs' residence, the officers heard gunfire from somewhere in the surrounding area, and while driving past the residence they observed one individual holding what the officers believed was a rifle.[1] (*Id.* 2:8–13).

The officers informed dispatch they were responding to gun fire. (*Id.* 2:15–16). They then exited the truck several houses down from Plaintiffs' residence, un-holstered their guns, and approached Plaintiffs' residence on foot without activating their handgun-mounted flashlights or announcing their presence. (*Id.* 2:15–19). Someone standing in the driveway of

---

[1] Some residents in North Las Vegas celebrate New Year's Eve by shooting firearms into the air at midnight, which is a misdemeanor crime when done inside the city limits. (Order 1:21–22, ECF No. 107).

Plaintiffs' residence noticed the officers as they approached and asked who they were. (*Id.* 2:20–21). At that point, the officers activated their flashlights and rushed onto the property. (*Id.* 2:21–22). The officers also claim that they identified themselves as police, but the other witnesses testified that the officers did not identify themselves and that in their camouflage uniforms, they did not recognize the officers as police. (*Id.* 2:21–26).

While Officer Harris approached several individuals standing in the driveway, Officer Pollard pursued other individuals who had run toward the residence. (*Id.* 3:1–7). The residence includes a porch that is enclosed with a tarp, except for an opening that allowed for ingress and egress through the front door. (*Id.* 3:8–9). Chasing the runners, Officer Pollard ran up to the porch and pulled back the tarp, looking into the porch. (*Id.* 3:9–10). At this point, Officer Pollard noticed movement to his left and turned to find Fernando Sauceda ("Sauceda") pointing a gun at his face. (*Id.* 3:11–13). Officer Pollard responded to this threat by holding down Sauceda's right arm and firing twelves shots. (*Id.* 3:12–14). Officer Pollard's shots hit Sauceda nine times—five in the front and four in the back—and he died soon after while attempting to flee from Officer Pollard. (*Id.* 3:14–21).

Plaintiffs subsequently filed their lawsuit, alleging six causes of action arising from the shooting: (1) Fourth Amendment violation due to use of excessive force; (2) § 1983 municipal liability; (3) intentional or negligent infliction of emotional stress; (4) assault and battery; (5) negligence; and (6) negligent supervision and training. (Complaint, ECF No. 1). Defendants filed a Motion for Summary Judgment on all claims, and in his Order on the motion, Judge Gordon found in favor of Defendants on Plaintiffs' municipal liability and negligent supervision and training claims but withheld judgment on Plaintiffs' Fourth Amendment excessive force claim and the three other state law claims. (Order 19:21–20:8, ECF No. 107). Judge Gordon also found that the actual shooting of Sauceda was not excessive force, but he ordered supplemental briefing on the issue of whether Officer Pollard's conduct in provoking

1 the shooting constituted an independent constitutional violation sufficient for the four
2 remaining claims to survive summary judgment. (*Id.* 8:7–10:22, 16:1–18:3, 19:21–20:8).
3   Following entry of the Order, Plaintiffs filed their Motion to Reconsider and both parties
4 filed their respective supplemental briefs. Judge Gordon then recused himself from the case,
5 and it was resigned to this Court.

## II. LEGAL STANDARD

### A. Motion to Reconsider Standard

  A motion to reconsider a final appealable order is appropriately brought under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991); *see also United States v. Martin*, 226 F.3d 1042, 1048, n.8 (9th Cir. 2000). When a motion to reconsider is timely filed within the 28-day period specified under the statute, it is treated as a Rule 59(e) motion. *See Am. Ironworkers & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001).

  Motions for reconsideration under Rule 59(e) are committed to the discretion of the trial court. *See School Dist. No. 1J. Mutlinomah County v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). However, absent highly unusual circumstances, a district court should not grant a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure unless the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* at 1263; *see also Allstate Ins. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Furthermore, although the court enjoys discretion in granting or denying a motion under this rule, "amending a judgment after its entry remains an extraordinary remedy which should be used sparingly." *Herron*, 634 F.3d at 1111 (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)) (internal quotations omitted).

/////

**B. Motion for Summary Judgment Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and

1  the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,
2  398 U.S. 144, 159–60 (1970).

3       If the moving party satisfies its initial burden, the burden then shifts to the opposing
4  party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*
5  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,
6  the opposing party need not establish a material issue of fact conclusively in its favor.  It is
7  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
8  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*
9  *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid
10 summary judgment by relying solely on conclusory allegations that are unsupported by factual
11 data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go
12 beyond the assertions and allegations of the pleadings and set forth specific facts by producing
13 competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

14      At summary judgment, a court's function is not to weigh the evidence and determine the
15 truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
16 The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn
17 in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is
18 not significantly probative, summary judgment may be granted. *See id.* at 249–50.

19 **III.   DISCUSSION**

20      There are two issues currently before the Court.  The first issue—as presented in the
21 Motion to Reconsider—is whether this Court should alter Judge Gordon's finding that Officer
22 Pollard's shooting of Sauceda itself was not excessive force. (Mot. to Reconsider 3:14–20, ECF
23 No. 112).  The second issue—which has now been briefed by the parties—is whether
24 Defendants are entitled to summary judgment on the remaining claims from which Judge
25

Gordon withheld judgment when he entered his order on the Motion for Summary Judgment. *See* (Pls' Supp. Brief, ECF No. 113; Defs' Supp. Brief, ECF No. 114).

### A. Motion to Reconsider

Regarding the Motion to Reconsider, that motion is denied for two reasons. First, as Plaintiffs themselves acknowledge, their motion is premature. (Mot. to Reconsider 3:13–14, ECF No. 112). Federal Rules of Civil Procedure 59(e) and 60(b) only allow the reconsideration of "final judgments and appealable interlocutory orders." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 583 n.1 (D. Ariz. 2003) (citing *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466–67 (9th Cir. 1989)); *see also Martin*, 226 F.3d at 1048 n.8 ("Rule 60(b), like Rule 59(e), applies only to motions attacking final, appealable orders . . . ."). Judge Gordon's Order, however, is not a final judgment or an appealable interlocutory order because it did not "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Moreover, the specific issue sought to be reconsidered relates to the excessive force claim which was expressly left unresolved by Judge Gordon's Order when he withheld judgement concerning whether Plaintiffs' claim survives under a provocation theory. Accordingly, Plaintiffs motion must be denied for being filed before final judgment was entered.

Second, even if Plaintiffs' motion was not premature, Plaintiffs fail to demonstrate any of the causes justifying reconsideration under Rule 59(e). Plaintiffs make no showing of new evidence, clear error, or change in the controlling law, and instead merely insist that the Court should withhold judgment on whether the shooting itself could constitute excessive force until it considers the arguments contained in their Supplemental Brief. (Mot. to Reconsider 3:14–20, ECF No. 112). This argument, however, does not justify granting a motion for reconsideration. *See School Dist. No. 1J. Mutlinomah County*, 5 F.3d at 1263 (A district court should not grant a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure unless the

court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."). Accordingly, Plaintiffs' have failed to show that the "extraordinary remedy" of reconsideration is appropriate in this case, and Plaintiffs' Motion for Reconsideration is denied.

### B. Summary Judgment Motion on Remaining Claims

In his Order, Judge Gordon withheld judgment on Plaintiffs' excessive force claim under a provocation theory as well as Plaintiffs' related state law claims for intentional or negligent infliction of emotional distress, assault and battery, and negligence. Judge Gordon explained that if, in taking the facts in the light most favorable to Plaintiffs, Officer Pollard's conduct leading up to the shooting constituted a separate violation of constitutional rights, then Defendants' request for summary judgment on these claims must be denied. *See* (Order 8:7–10:22, ECF No. 107). Specifically, Judge Gordon requested additional briefing on whether Officer Pollard's warrantless search of the covered porch with his gun drawn and without announcing himself as an officer constituted a constitutional violation that provoked the deadly confrontation. (*Id.*); *see also Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1216 (9th Cir.) cert. granted sub nom. *City & Cnty. of S.F., Cal. v. Sheehan*, 135 S. Ct. 702 (2014) ("Officers may be held liable for an otherwise lawful defensive use of deadly force when they intentionally or recklessly provoke a violent confrontation by actions that rise to the level of an independent Fourth Amendment violation."). Having reviewed the parties' supplemental briefs on this issue, the Court finds that there is at least a genuine issue of material facts concerning whether Officer Pollard's actions leading up to the shooting constituted a constitutional violation. Therefore, Defendant are denied summary judgment on the remaining claims.

To establish liability for the shooting under a provocation theory, Plaintiffs must show (1) Pollard's conduct leading up to the confrontation recklessly or intentionally provoked the confrontation, and (2) Pollard's reckless or intentional conduct constituted an independent

Fourth Amendment violation. *Burns v. City of Redwood City*, 737 F. Supp. 2d 1047, 1062 (N.D. Cal. 2010); *see also Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 538–39 (9th Cir. 2010). As Judge Gordon explained:

> There is no evidence Pollard intentionally provoked the confrontation with Sauceda. But viewing all reasonable disputes of fact in plaintiffs' favor, there is a triable issue as to whether Pollard's warrantless entry onto the covered porch, with his gun drawn, was reckless. The officers were responding to misdemeanor celebratory gunfire, and Pollard admits that when he approached Sauceda's home he did not see any weapons and he did not otherwise feel threatened. In the dark, Pollard's fatigue-style uniform did not readily identify him as a police officer, and the officers were driving an unmarked pickup truck. Viewing witness testimony in plaintiffs' favor, Pollard drew his weapon, chased after people, entered Sauceda's covered porch without a warrant and without announcing himself as a police officer, and pointed his weapon at people. A reasonable jury could find Pollard acted recklessly.

(Order 9:5–14, ECF No. 107) (citations omitted). Accordingly, the question remaining to be resolved is whether these actions also constituted a Fourth Amendment violation.

The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . ." U.S. Const. amend. IV. As the Ninth Circuit has explained, "searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Martinez*, 406 F.3d 1160, 1163 (9th Cir. 2005). Furthermore, this presumption extends beyond the house to include the area immediately surrounding the dwelling, traditionally known as the "curtilage." *United States v. Dunn*, 480 U.S. 294, 300–01 (1987).[2] However, the presumption is not irrebuttable, and there are two general exceptions to the warrant requirement for home searches: exigency and emergency. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009).

---

[2] The parties do not dispute that the covered porch constituted the curtilage of the Sauceda residence. *See also Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013) ("The front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends.").

1   "The emergency exception stems from the police officers' community caretaking function and
2   allows them to respond to emergency situations that threaten life or limb; this exception does
3   *not* derive from police officers function as criminal investigators." *Id.* (quoting *United States v.*
4   *Cervantes*, 219 F.3d 882, 889 (9th Cir. 2000)).  "By contrast, the exigency exception does
5   derive from the police officers' investigatory function; it allows them to enter a home without a
6   warrant if they have both probable cause to believe that a crime has been or is being committed
7   and a reasonable belief that their entry is necessary to prevent the destruction of relevant
8   evidence, the escape of the suspect, or some other consequence improperly frustrating
9   legitimate law enforcement efforts." *Id.* (quoting *United States v. McConney*, 728 F.2d 1195,
10  1199 (9th Cir. 1984) (en banc)).  However, Defendants have failed to show that either
11  exception applies.

    **1.  Emergency Exception**

    For the emergency exception to apply, Defendants must show: "(1) considering the
14  totality of the circumstances, law enforcement had an objectively reasonable basis for
15  concluding that there was an immediate need to protect others or themselves from serious
16  harm; and (2) the search's scope and manner were reasonable to meet the need." *United States*
17  *v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008) (replacing the old three-part test from *Cervantes* in
18  light of the Supreme Court's decision in *Brigham City v. Stuart*, 547 U.S. 398 (2006) that an
19  officer's subjective motivation is irrelevant).  Viewing the facts in a light most favorable to
20  Plaintiffs, the officers had an objectively reasonable basis for concluding that there was an
21  immediate need to protect others from harm.  The officers heard gunshots coming from the
22  immediate area around the Suaceda residence and believed that they might have seen a rifle
23  when driving past the home.  Accordingly, while the officers were aware that the gunfire was
24  most likely celebratory, the dangerous nature of any kind of gunfire as well as the potential of a
25  more serious crime, gave the officers a reasonable basis for believing that there was a need to

protect others from serious harm. *See United States v. Russell*, 436 F.3d 1086, 1090 (9th Cir. 2006) (finding that it was reasonable for officers to believe there was an emergency when responding to a 911 call regarding a gunshot injury); *United States v. Coughlin*, 202 F. App'x 194, 195 (9th Cir. 2006) ("[S]ince the bus was the location of the reported gunshot, it was reasonable to associate the bus with the emergency.").

However, Defendants have failed to show as a matter of law that the manner of the officers' search in this case was reasonable to meet the need. Rather than approach the residence in calm manner, announcing their presence while attempting to ascertain whether there was an emergency, the officers in this case stealthily approached the area and upon being asked to identify themselves, instead rushed onto the property with their guns drawn and—without identifying themselves as police—began chasing individuals who fled from them. Furthermore, while the officers thought they had seen a rifle when initially driving past the residence, they admitted that while approaching on foot they did not see any firearms. Under these facts, a jury could find that the scope and manner of the officers' search was unreasonable. *Compare Alexander v. City and County of San Francisco*, 29 F.3d 1355 (9th Cir. 1994) (finding a search to be unreasonable where officers, "storming" into the home of a man known to be "a mentally ill, elderly, half-blind recluse who threatened to shoot anybody who entered," shot and killed the man when he pointed and tried to fire a handgun at the entering officers) *with Duran v. City of Maywood*, 221 F.3d 1127 (9th Cir. 2000) (finding plaintiffs were not entitled to an "*Alexander* instruction" on an unreasonable search causing a shooting when the officers responding to a shots fired call arrived at a home in marked police cars wearing police uniforms, walked up the driveway of the home with their guns drawn, and then shot and killed a man who pointed a gun at them and ignored their command to drop the weapon); *see also Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 534–39 (9th Cir. 2010) (affirming the district court's finding of genuine issues of fact regarding whether the officers

intentionally or recklessly provoked a confrontation where the officers—responding to a call about an open door at a suspected drug house—entered the residence, observed a bloody shirt on the first floor, and upon hearing noise in the attic, climbed into the attic and shot an unarmed man because they believed he had a gun).

### 2. Exigency Exception

For the exigency exception to apply, Defendants must show: (1) the officers had probable cause to search the house and (2) the exigent circumstances justified the warrantless intrusion. *Hopkins*, 573 F.3d at 766–67. "A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013). Exigent circumstances include "the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Hopkins*, 573 F.3d at 763. Furthermore, "a search under this exception must be limited in scope so that it is 'strictly circumscribed by the exigencies which justify its initiation.'" *United States v. Camou*, 773 F.3d 932, 940 (9th Cir. 2014) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393 (1978)); *see also United States v. Reyes–Bosque*, 596 F.3d 1017, 1029 (9th Cir. 2010) ("In order to prove that the exigent circumstances doctrine justified a warrantless search, the government must [also] show that . . . the search's scope and manner were reasonable to meet the need.").

Again viewing the facts in a light most favorable to Plaintiffs, the officers had probable cause to believe that a crime had been or was being committed because they heard gunshots coming from the immediate area around the Suaceda residence and believed that they might have seen a rifle when driving past the home. However, Defendants have failed to show any exigent circumstance existed to justify the manner of their warrantless search. The officers were not in pursuit of a fleeing suspect as they approached the house, and there is nothing

indicating that the officers' stealth approach and storming of the residence was justified in order to prevent the destruction of evidence, to protect themselves or others, or to effect some other legitimate law enforcement effort.  At the time of their approach, the officers did not see any weapons or hear any gunshots, so they had no reason to believe that a quick rush of the residence was necessary to protect themselves or others.  Indeed, it was because of the manner of their search that the officers put their lives and the lives of others in danger by creating a chaotic and panicked situation in an area where they believed firearms to be located. Therefore, a jury could find that the manner of their search was unreasonable and not justified by exigent circumstances.  Accordingly, there is at least a triable issue of fact concerning whether the officers' warrantless intrusion into the Sauceda residence was a violation of Plaintiffs' Fourth Amendment rights.

### 3.  Qualified Immunity

Defendants have also argued in their brief that even if triable issues of fact exist concerning whether Officer Pollard's actions amounted to a constitutional violation, they are still entitled to summary judgment under a qualified immunity defense. (Defs' Supp. Brief 21:22–27:3, ECF No. 114).

Determining whether a law enforcement officer is entitled to qualified immunity involves a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  In the first step, the Court must view the record in the light most favorable to the party asserting injury in determining whether the officer's conduct violated a constitutional right. *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).  If the plaintiff establishes the violation of a constitutional right, the Court next considers whether that right was clearly established at the time the alleged violation occurred. *Id.*  To be clearly established, "[t]he contours of the right must have been clear enough that a reasonable officer would have understood that what he or she was doing violated that right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)).  Additionally,

in asserting a qualified immunity defense at the summary judgment stage, the defendant bears the burden of showing that no genuine issues of material fact exist and that he is entitled to the defense. *See id.* ("[T]he moving defendant bears the burden of proof on the issue of qualified immunity . . . .").

Defendants do not dispute that at the time of their search, it was clearly established that an officer cannot conduct a warrantless search of an individual's front porch unless an exigency or emergency exception applies. *See United States v. Struckman*, 603 F.3d 731, 738 (9th Cir. 2010) (discussing what constitutes constitutionally protected curtilage to a home and stating that warrantless search of a home is presumptively unreasonable).  Instead, Defendants argue at step two of the qualified immunity analysis that Officer Pollard could have reasonably believed that his search was justified under the exigency exception of hot pursuit of suspected criminals. (Defs' Supp. Brief 21:22–27:3, ECF No. 114).  The Court disagrees.

As previously discussed, one of the exigent circumstances justifying a warrantless search is to prevent the escape of a suspect. *See Hopkins*, 573 F.3d at 763.  A closely related exigent circumstance applies when an officer is in "hot pursuit" of a fleeing suspect. *See Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) ("This Court has identified several exigencies that may justify a warrantless search of a home[, including] when [police officers] are in hot pursuit of a fleeing suspect."); *Struckman*, 603 F.3d at 743 ("The exigent circumstances exception is premised on 'few in number and carefully delineated' circumstances[, including] the hot pursuit of a fleeing suspect . . . .") (citations omitted); *see also United States v. George*, 883 F.2d 1407, 1415 n.5 (9th Cir. 1989) (expressing skepticism that the hot pursuit doctrine is a separate exception from the general exigency exception).  The hot pursuit exception to the warrant requirement applies when officers are in "immediate" and "continuous" pursuit of a suspect from the scene of the crime. *United States v. Johnson*, 256 F.3d 895, 907 (9th Cir. 2001) (en banc).  However, as with other exigent circumstances, a hot pursuit search's scope

and manner must also be reasonable in light of the circumstances. *See Camou*, 773 F.3d at 940 (stating that a warrantless search based on exigent circumstances must be strictly circumscribed by the circumstances to be reasonable); *Reyes–Bosque*, 596 F.3d at 1029 (same).

Prior to Officer Pollard's search, the Ninth Circuit held that a misdemeanor offense "rarely, if ever," would justify a warrantless entry into a home. *See Hopkins*, 573 F.3d at 769 (rejecting a qualified immunity argument where officers broke into the home of a DUI suspect without a warrant or probable cause); *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013–15 (9th Cir. 2002) (finding use of guns and handcuffs to detain a suspect unreasonable because "the crime under investigation was at most a misdemeanor [and] the suspect was apparently unarmed and approaching the officers in a peaceful way"); *Johnson*, 256 F.3d at 908 n.6 (stating that "where an officer is truly in hot pursuit and the underlying offense is a felony, the Fourth Amendment usually yields . . . [but] in situations where the underlying offense is only a misdemeanor, law enforcement must yield to the Fourth Amendment in all but the 'rarest' cases.") (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984)). While stopping short of creating a categorical rule that a warrantless search of a home in an effort to apprehend an individual suspected of a misdemeanor offense is always unconstitutional, the Ninth Circuit does make clear that absent some rare exigent circumstances, such a search would be a violation of the Fourth Amendment. Here, Officer Pollard was chasing individuals he believed may have committed the misdemeanor offense of discharging firearms within city limits. Accordingly, it was clearly established at the time of his pursuit that his actions would only be constitutional in the case of rare exigent circumstances.

Defendants' argument in favor of qualified immunity relies almost entirely on the Supreme Court's recent holding in *Stanton v. Sims*, 134 S. Ct. 3 (2013). In that case, the court reversed the Ninth Circuit's denial of a qualified immunity defense when an officer pursued a suspected misdemeanant into an enclosed front yard and found that the officer was entitled to

qualified immunity because the law regarding warrantless entry while in hot pursuit of a misdemeanant was not clearly established. *Id.* at 7.[3]  The officer's actions in *Stanton*, however, are significantly more reasonable than and readily distinguishable from Officer Pollard's actions here.  In *Stanton*, two officers, responding to a call about an "unknown disturbance" involving a person with a baseball bat, arrived at the scene in a marked police car wearing police uniforms. *Id.* at 3.  Upon seeing the officers, a man quickly crossed the street in front of them, ignored the officers' yells of "police" and orders to stop, and quickly entered a gated yard that was later revealed to be owned by another individual. *Id.*  Seeing this suspicious behavior, believing the suspect could be dangerous, and having witnessed the suspect at least commit the misdemeanor offense of disobeying an order to stop, one of the officers kicked open the gate, resulting in an injury to the innocent owner of the property. *Id.*

Unlike the officer in *Stanton*, however, Officer Pollard—when viewing the facts in a light most favorable to Plaintiffs—did not actually witness a crime, was not wearing an identifiable uniform, did not arrive in a marked police car, and did not identify himself as an officer.  Moreover, instead of merely kicking open a gate, Officer Pollard quietly approached and then, when asked to identify himself, suddenly charged onto private property late at night with his gun drawn and began chasing several fleeing individuals onto a covered porch.  Given the unreasonableness of these actions, even if the exigent circumstances here—namely, suspecting that some of the pursued individuals may have previously committed the misdemeanor of discharging a firearm and might escape arrest—fell within those "rarest cases" where the pursuit was constitutional, the Court finds that no officer could have reasonably believed that the manner in which Officer Pollard acted immediately prior to and during the pursuit was constitutional. *Cf. King*, 131 S. Ct. at 1858 ("[T]he exigent circumstances rule

---

[3] The Supreme Court also expressly declined to clarify the law regarding the warrantless pursuit of a misdemeanant onto private property despite noting a split among federal and state courts on the issue. *Stanton*, 134 S. Ct. at 7.

justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense.").[4] The officers could not have reasonably relied on the exigency of pursuing the fleeing suspects in order to justify their otherwise unconstitutional search when that exigency was itself created by their own unreasonable actions in stealthily approaching and rushing onto the Saucedas' property with guns drawn and without identifying themselves. *See id.* at 1857–58 (discussing how police cannot act unreasonably and thereby create an exigency exception to justify a warrantless entry). Accordingly, regardless of whether an officer could reasonably believe that pursuit of the suspected misdemeanants onto a porch was constitutional, because no officer could reasonably believe that the manner of Officer Pollard's search here was reasonable, Defendants have failed to show they are entitled to qualified immunity.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Reconsider (ECF No. 112) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 101) as it relates to the remaining claims not resolved by the Court's previous Order (ECF No. 107) is **DENIED**. Plaintiffs' claims for Fourth Amendment violation due to use of

---

[4] The unreasonableness of Officer Pollard's actions is further highlighted when those actions are considered in the context of the policy behind the hot pursuit doctrine. The purpose of the exception is so "that a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976); *see also Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013) ("The 'pursuit' begins when police start to arrest a suspect in a public place, the suspect flees and the officers give chase."). In other words, the hot pursuit exception exists to prevent individuals—like the one in *Stanton*—from frustrating legitimate law enforcement efforts, such as arresting a suspect or preventing the destruction of evidence, simply by moving into a private place. *See George*, 883 F.2d at 1412–15 (discussing in depth the need for exigency exceptions for warrantless house arrests because once suspects are aware of their imminent capture they may "in desperation discard or destroy incriminating evidence, search for avenues of escape, or resort to violence against the officers or, worse, against innocent bystanders," but noting that such exigencies are not necessary in most cases where the suspects are unaware of police presence). Here, however, in taking the facts in the light most favorable to Plaintiffs, the individuals being pursued by Officer Pollard were not attempting to evade arrest or destroy evidence by moving to a private location; they were fleeing for safety from unknown gunmen. Consequently, their actions in retreating to the porch were not an effort to frustrate law enforcement but were natural responses to the perceived attack of the unidentified officers.

excessive force, intentional or negligent infliction of emotional stress, assault and battery, and negligence survive summary judgment.

**DATED** this ___1___ day of December, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge